Richard J. Daley, Mayor, Local Liquor Control Commissioner, Plaintiff-Appellant, v. License Appeal Commission, A. L. Cronin, Chairman, et al., Nick P. Hareas, Licensee, Defendants-Appellees.

Gen. No. 49,713.

First District, First Division.

November 16, 1964.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Robert J. Collins, Assistant Corporation Counsel, of counsel), for appellant.

Mullin, Rosenbloom & Zun, of Chicago (Gerald B. Mullin and William M. Devine, of counsel), for Nick P. Hareas, licensee, appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

The Mayor, as the Local Liquor Control Commissioner for the City of Chicago, revoked the retail liquor license issued to Nick P. Hareas for premises located at 743 N. Rush Street.

On review, the order of revocation was reversed by the License Appeal Commission and the Commission's ruling was affirmed by the Circuit Court. The local commissioner appeals.

The order of revocation was based upon the following findings of fact made by the local commissioner:

1. That on September 18, 1963 Nello Gabellini, bartender on the licensed premises, permitted a female on said premises, to solicit a police officer to purchase alcholic liquor;
2. That he permitted said female to solicit said officer to engage in acts of prostitution; and
3. That he permitted the female to commit acts of lewdness and public indecency

all in violation of the statutes of the State of Illinois and ordinances of the City of Chicago.

In reversing this order, the License Appeal Commission ruled that:

(a) The Mayor, as the local commissioner had proceeded in the manner provided by law;
(b) The order of revocation was not supported by the evidence, and
(c) The findings that the bartender permitted the female to solicit the purchase of alcoholic liquor, to solicit to engage in acts of prostitution, and to commit acts of lewdness and public indecency, were not supported by substantial evidence in the light of the whole record.

The local commissioner does not defend his findings, two (2) and three (3) namely, that the licensee permitted the female to solicit an engagement in acts of prostitution and to commit acts of lewdness and public indecency. But he does contend that the evidence

establishes the licensee's violation of the Municipal Code of Chicago, Chap 147, sec 147–15 which provides as follows:

> It shall be unlawful for any licensee, his manager, or other person in charge of any licensed premises where alcoholic liquor is sold or offered for sale for consumption thereon to . . . permit . . . any female person other than the licensee or . . . (certain relatives of the licensee) to draw . . . any alcoholic liquor, nor shall any other female be permitted to remain on said premises, who shall solicit any patron or customer thereof to purchase alcoholic or non alcoholic liquor for her, himself, or any other person therein . . .

The licensee's sole contention is that the evidence adduced is insufficient to establish "that the bartender knew of a solicitation to purchase on the premises or condoned such activity and that the License Appeal Commission properly reversed the order."

The Illinois Liquor Control Act (Ill Rev Stats (1963) c 43, § 112) grants to the local commissioner the power to revoke for cause all local licenses issued to persons for premises within his jurisdiction. Section 149 of the Act provides that he may revoke any license if he determines that the licensee has violated any provisions of the Act or of any valid ordinance or resolution enacted by the City Council. A review of the local commissioner's order to determine whether a license has been improperly revoked may be had before the License Appeal Commission in cities with a population exceeding 200,000 inhabitants, by section 153 of the statute. The review is limited to the questions: (a) whether the local commissioner had proceeded in the manner prescribed by law; (b) whether the order is supported by the findings; and

(c) whether the findings are supported by substantial evidence in the light of the whole record.*

Admittedly, the Mayor, as the local commissioner had proceeded in the manner prescribed by law. The record further disclosed that in his finding he determined that the licensee had violated the ordinance passed by the City Council and that consequently the order was supported by the findings.

The only issue before us is whether the findings are supported by substantial evidence in the light of the whole record.

The record consists of the testimony of police officer Charles Nichols and the licensee who was called as an adverse witness. Nichols testified that he was in civilian clothes, entered the licensed premises and seated himself at the center of the bar. He learned the bartender's name was Nello Gabellini. He ordered a Canadian Club and Seven-Up for which he paid 85 cents. It was a warm night and there was no disturbance of any kind. No one else was in the place other than a girl sitting at the end of the bar. After about 15 minutes a tall red-haired woman about 25 years of age, laid her purse next to him and sat down to his right. The bartender at that time was standing behind the bar about four feet in front of him. The girl said to Nichols that he looked sad and he answered by saying he didn't feel sad. She then asked him: "Will you buy me a drink?" The bartender remained in the same position. Nichols motioned to the bartender, saying: "Would you please give me a drink and the young lady a drink?" The bartender served Nichols the same kind of a drink he had before and

---

* No new or additional evidence in support of or in opposition to such order or action on appeal can be received other than that contained in the record of proceedings before the local commissioner.

317

poured the girl a drink from an unlabeled bottle that was behind the bar. She drank it "as you would a shot. She just poured it down." Nichols placed three dollars on the bar and was given 15 cents change. Another round of drinks was ordered and the bartender repeated the operation again taking two dollars and eighty five cents. At no time did the girl mention to the bartender the kind of drink she desired. After sitting at the bar 15 or 20 minutes she asked Nichols if he would like to sit in a booth stating it would be much more comfortable although the drinks were a little bit more expensive. The bartender still remained behind the center of the bar at the cash register, and "where we were sitting." Nichols and the girl went to a dark booth at the north wall of the tavern, fifteen feet from the bar and about twenty-five feet from the tavern entrance. The booth was enclosed on three sides and the open side was away from the bar. Nichols entered the booth first and the girl followed sitting on his right, almost on top of him. A waitress took the order and served them the same kind of drinks they had at the bar. Nichols gave her three dollars and, this time, received no change. Nichols and the girl had a dance in the center of the tavern between the bar and some tables there. A juke box was playing at the time. Upon returning to the booth they were served another round of similar drinks without ordering. Again three dollars was charged. Shortly thereafter the waitress returned with still another round. Being told he owed for the last drinks Nichols gave the waitress five dollars. They had four rounds of drinks in the booth.

Nick Hareas, called as an adverse witness, testified that he was the licensee and owned the tavern. He stated that he usually opened up the place about one o'clock in the afternoon and stayed until 8:30 or 9 p. m. His bartender, Nello Gabellini, would then

take over after he left. When he left at 8 or 8:30 p. m., he would not return and Gabellini would close the place. The waitress was employed by him. Hareas was not in the tavern at the time in question and he stated he had never seen the girl in question, before the described incident.

Under the Administrative Review Act the finding and conclusions of the local commissioner on questions of fact are to be held prima facie true and correct (Ill Rev Stats (1963) c 110, § 274). The testimony of Nichols was uncontradicted and unimpeached. The evidence indicates the bartender was within close proximity, four feet, from Nichols and the girl when their conversation took place. No one else was in the place. It was quiet. Gabellini was in charge of the tavern. He knew what the girl drank. The officer came in alone and was at the bar for 15 minutes before the girl appeared. Her drinks came from an unlabeled bottle, and were priced unusually high, two dollars a drink. Surely, Gabellini witnessed the trip to the booth and the dancing. He prepared the drinks they consumed in the booth. None of this was denied or satisfactorily explained. From the evidence a history of solicitation can be inferred and the pattern of suspicious conduct went unexplained.

■ ■ In the face of this undisputed evidence the local commissioner's finding with regard to the solicitation by the female for the purchase of drinks and the bartender's knowledge of such solicitation was substantially supported by the evidence in the light of the whole record. We will not substitute our judgment for that of the local commissioner unless it appears that the order was against the manifest weight of the evidence. Nechi v. Daley, 40 Ill App2d 326, 188 NE2d 243 (1963). Such is not the case here. The local commissioner properly exercised his discretionary power in ordering the revocation.

For the reasons given the order of revocation of the Local Liquor Control Commissioner is affirmed. The judgment of the Circuit Court and the order of the License Appeal Commission are reversed.

Reversed.

MURPHY, P. J. and BURMAN, J., concur.